**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re Application of | ) | Case No. 1:26-cv-09964 |
| AHMAD NASSAR for an Order | ) | |
| Pursuant to 28 U.S.C. § 1782 | ) | Hon. Lindsay C. Jenkins |
| Granting Leave to Obtain Discovery | ) | |
| for Use in Foreign Proceedings, | ) | Magistrate Judge M. David Weisman |
| | ) | |
| Applicant. | ) | |

**RESPONDENT WAJID MIR SYED'S EMERGENCY MOTION TO STAY COMPLIANCE, TO QUASH OR MODIFY THE SUBPOENA, FOR A PROTECTIVE ORDER, AND TO VACATE THE SEPTEMBER 18, 2026 ORDER AS TO HIM**

Respondent Wajid Mir Syed, by his undersigned counsel, moves on an emergency basis under 28 U.S.C. § 1782(a), Federal Rule of Civil Procedure 45(d)(3), and Federal Rule of Civil Procedure 26(c)(1) for an order (1) staying compliance with the subpoena directed to him, including the October 21, 2026 return date that Applicant's counsel has asserted, until this motion is decided; (2) quashing the subpoena and vacating the Court's September 18, 2026 Order (Dkt. 19) insofar as it authorizes discovery from him; or (3) in the alternative, modifying the subpoena and entering a protective order. In support, Mr. Syed states as follows:

## INTRODUCTION

This motion is an emergency because of what did not happen before Mr. Syed's present counsel was retained on Friday, October 16, 2026. Mr. Syed's prior counsel appeared in this matter on August 21, 2026 (Dkts. 15, 16), filed nothing before the Court granted the application on September 18, and filed nothing after it. After the subpoena was served on October 1, prior counsel told Applicant's counsel on October 7 that, because he was starting a trial on October 19, any conference would need to wait until the week after October 19. (Ex. C.) Applicant's counsel now asserts an "October 21 return date" and has said that Applicant expects full production by then and reserves "the right to seek sanctions" if Mr. Syed does not produce. (*Id.*) Present counsel is moving

on the first business day after being retained because, without a stay, production will moot the questions this motion presents.

Those questions are substantial. Applicant's memorandum told the Court that the suit by the Professional Tennis Players Association (the "PTPA") and Winners Alliance, Inc. against Mr. Syed in this District (the "Related Case") "does not provide an alternative path" to this discovery because Mr. Nassar "is not a party to that case (and thus has no ability to serve discovery requests)." (Dkt. 7-1 at 35.) The September 18 order does not mention the Related Case. (*See* Dkt. 19.) But Mr. Nassar is the Chief Executive Officer of Winners Alliance (Dkt. 8 ¶ 2) and CEO of the Professional Tennis Players Assocaition; his counsel here also represents Winners Alliance and the PTPA "in connection with the campaign of defamation" this application concerns (Dkt. 9 ¶ 3); and on October 6, five days after this subpoena was served, the PTPA and Winners Alliance served document requests on Mr. Syed in that case seeking the same material and "[a]ll Documents produced (or later produced)" in this matter. (Ex. A, Request No. 28.) Mr. Nassar himself has told Judge Cummings that the two matters "involve and arise in part out of overlapping facts." (Related Case Dkt. 55 at 1.) A subpoena that would deliver discovery on contested questions in pending domestic litigation — a month before that discovery is due there, outside the procedures Magistrate Judge Kim has set, and with no protective order or limit on use — is what the third *Intel* factor screens for. At a minimum, the subpoena should be confined to what the foreign proceedings need, and its use outside them should be limited.

## BACKGROUND

### A. The Related Case.

The PTPA and Winners Alliance sued Mr. Syed in this District on July 6, 2026, in *Professional Tennis Players Association v. Syed*, No. 1:26-cv-07886 (N.D. Ill.), and filed their First Amended Complaint on July 24, 2026. (Related Case Dkt. 32; Related Case Dkt. 55 at 4.) The amended complaint identifies Mr. Nassar as "Winners Alliance CEO Ahmad Nassar" (Related Case Dkt. 32 ¶ 1) and alleges that Mr. Syed disparaged "the PTPA, Winners Alliance, and Nassar"

(*id.* ¶ 40); that he "created, or caused to be created, fake social media accounts and used those accounts to disseminate false, misleading, and disparaging statements about the PTPA, Winners Alliance, and their respective leaderships" (*id.* ¶ 42); that he "disclosed, and threatened to use, privileged and confidential information he obtained while serving as the PTPA's counsel" (*id.* ¶ 56); and that he breached his agreement "by disparaging Winners Alliance, its chief executive, and its services to players, tennis officials, and others, in the United States and abroad" (*id.* ¶ 91). Mr. Syed denies the fake-account, confidential-information, and breach allegations. (Related Case Dkt. 62 ¶¶ 42, 56, 91.)

Discovery in the Related Case is referred to Magistrate Judge Kim. (Related Case Dkt. 45 ¶ 5; Related Case Dkt. 46.) His August 7, 2026 order required the parties to serve interrogatories and requests to produce by October 6, 2026, and to serve answers, including production of responsive documents, by November 19, 2026; directed the parties to confer about the responses by December 10 and to file a joint status report by December 22; stated that general objections will not be considered; and entered an order under Federal Rule of Evidence 502(d). (Related Case Dkt. 47.) Judge Cummings directed the parties to meet and confer regarding an agreed protective order. (Related Case Dkt. 45 ¶ 2.) No protective order has been entered.

On October 6, 2026, the PTPA and Winners Alliance served Mr. Syed with requests for production and interrogatories. (Exs. A, B.) They request, among other things, all contents of, and all account data for, "any social-media account that You, or any Person at Your direction or request, created, operated, controlled, or posted on or through" that referred to the PTPA, Winners Alliance, or their officers or employees (Ex. A, Request No. 24); communications with any person who operated such an account at Mr. Syed's direction (*id.*, Request No. 25); "All Communications between You and Christos Lambrou" (*id.*, Request No. 26); and "[a]ll Documents produced (or later produced)" in this matter (*id.*, Request No. 28). Interrogatory No. 14 asks Mr. Syed to identify every post since October 1, 2025 that refers to the PTPA, Winners Alliance, or Mr. Nassar and that was published from any account he created, maintained, controlled, or directed, "including

any account operated anonymously or under a pseudonym." (Ex. B, Interrogatory No. 14.) Responses are due November 19, 2026. (Related Case Dkt. 47.)

**B. Mr. Nassar, his counsel, and the Related Case.**

Mr. Nassar is the Chief Executive Officer of Winners Alliance. (Dkt. 8 ¶ 2.) His counsel in this matter, Clare Locke LLP, "represents Mr. Nassar, Winners Alliance, Inc. . . . , and the Professional Tennis Players Association . . . in connection with the campaign of defamation described in Mr. Nassar's declaration." (Dkt. 9 ¶ 3.) On June 10, 2026, Clare Locke, as counsel for Winners Alliance and the PTPA, sent Mr. Syed a cease-and-desist letter notifying him that they were investigating whether he directed the statements at issue. (*Id.* ¶¶ 6–7.) Mr. Nassar's declaration recounts the same alleged campaign the Related Case pleads: that Mr. Syed undertook "to seize control of the PTPA and to disparage me and Winners Alliance" and made false statements about Mr. Nassar to players, agents, and others. (*Compare* Dkt. 8 ¶¶ 28–30, *with* Related Case Dkt. 32 ¶¶ 40, 91.) It also asserts that the Posts "reflect apparent access to non-public information concerning the PTPA and Winners Alliance" that "was available to Mr. Mir by virtue of his positions." (Dkt. 8 ¶ 34; *see id.* ¶ 27.)

On August 27, 2026, Mr. Nassar moved in the Related Case to reassign this matter to Judge Cummings. (Related Case Dkt. 55; Dkt. 17.) He told Judge Cummings that the two matters "involve and arise in part out of overlapping facts" (Related Case Dkt. 55 at 1); that "one of the key 'occurrences' giving rise to the claims" in the Related Case "is Mr. Mir's disparagement of the Winners Alliance and its executive, Mr. Nassar" (*id.* at 7); and that the campaign underlying this application "is part of that same broad smear campaign" (*id.*). Judge Cummings denied the motion as moot because this matter had been "resolved and closed." (Related Case Dkt. 63.) Together with this motion, Mr. Syed is moving in the Related Case to reassign this matter and, in the alternative, for an order governing use in the Related Case of anything produced under the subpoena.

### C. The application, the subpoena, and the September 18 order.

Mr. Nassar filed the application on August 18, 2026, as an ex parte application. (Dkts. 1, 2.) His memorandum told the Court that § 1782 applications are typically considered ex parte because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." (Dkt. 7-1 at 10 n.1 (internal quotation marks and citation omitted).) It described the Related Case as a lawsuit "related to breaches of contract and fiduciary duties" (*id.* at 18) and stated that the Related Case "does not provide an alternative path to obtaining the discovery Mr. Nassar seeks; Mr. Nassar is not a party to that case (and thus has no ability to serve discovery requests), and neither is Mr. Lambrou" (*id.* at 35).

The proposed subpoena to Mr. Syed defines "You" to include his "attorneys" (Dkt. 1-1 at 7 ¶ 17) and sets a "Relevant Time Period" of "January 1, 2025 to the present" (*id.* at 8 ¶ 19). Request No. 1 seeks communications with Christos Lambrou, Craze & Friends, Ognjen Varađanin, and anyone else who registered or operated the two accounts or contributed to the Posts identified in the subpoena's appendix; Requests Nos. 3 and 6 concern the Posts and the identity of the operator of one of the accounts; and Request No. 2 concerns any retention of Craze & Friends, Mr. Varađanin, or Mr. Lambrou. (*Id.* at 8–9.) Two requests go further:

(a) Request No. 4 seeks all documents and communications "concerning the creation, operation, or use of any anonymous or pseudonymous X account to publish or amplify statements concerning Mr. Nassar, Winners Alliance, or the PTPA." (*Id.* at 9.)

(b) Request No. 5 seeks all documents and communications "relating to the truth or falsity of the statements in the Posts, including any information, document, or analysis You supplied to or received from any person concerning GST's bankruptcy, the reported federal investigation concerning OneTeam, the NFLPA, or the MLBPA, the governance of the PTPA, the finances of Winners Alliance, or any payment to Mr. Pospisil or Mr. Djokovic." (*Id.*)

Mr. Syed's prior counsel appeared on August 21, 2026. (Dkts. 15, 16.) No briefing schedule was set, and no response was filed before the Court granted the application on September 18, 2026. (Dkt. 19.) The order reasoned that Mr. Nassar "will not make Mr. Mir or Mr. Lambrou parties to the planned lawsuits in Ireland and Serbia, so he cannot obtain discovery materials from them through those suits." (*Id.* at 2.) The order does not mention the Related Case and places no limit on how the discovery may be used. On October 14, 2026, the referral was terminated. (Dkt. 20.)

**D. Service and the asserted October 21 return date.**

Applicant's counsel served the subpoena on Mr. Syed on October 1, 2026. (Ex. C.) The proposed subpoena filed with the application left the date and time for production "To Be Determined following service." (Dkt. 1-1 at 1.) On October 7, Applicant's counsel proposed by e-mail that Mr. Syed produce documents by October 16 and sit for a deposition on November 10, and invited counsel to propose other dates. (Ex. C.) Mr. Syed's prior counsel replied the same day that Applicant's counsel had not sent him the subpoena even though he had an appearance on file, that he was preparing for a trial beginning October 19, and that a conference would need to occur the week after October 19. (*Id.*) On October 13, prior counsel asked whether Applicant's counsel wanted to meet and confer. (*Id.*) Applicant's counsel replied that they were "happy to meet and confer with you regarding the subpoena before its October 21 return date," asked for dates that week, and stated: "Subject to any agreements that we may reach during our meet and confer, we expect that Mr. Mir will fully comply with the subpoena and produce all documents responsive to it by the October 21 return date—and we reserve the right to seek sanctions if he does not." (*Id.*) No conference occurred. Mr. Syed retained present counsel on Friday, October 16, 2026.

**E. Local Rule 37.2 statement.**

Present counsel has not conferred with Applicant's counsel in person or by telephone. Counsel was retained on Friday, October 16, 2026, two business days before the asserted return date, and is filing this motion on the next business day so that production does not moot it. Prior

counsel's efforts to schedule a conference are described above. (Ex. C.) Counsel for Mr. Syed will confer with Applicant's counsel by telephone at the earliest available time, will report the result to the Court before any hearing, and will promptly advise the Court of any agreement that narrows the dispute. Mr. Syed asks the Court to treat these circumstances as exceptional and, at a minimum, to stay compliance while the parties confer.

## ARGUMENT

### I. The Court should stay compliance immediately.

For good cause, the Court may enter an order "specifying terms, including time and place," for discovery, Fed. R. Civ. P. 26(c)(1)(B), and the court for the district where compliance is required must quash or modify a subpoena on timely motion when the grounds in Rule 45(d)(3)(A) are present. A short stay preserves the Court's ability to decide this motion. Once documents are produced and a deposition is taken, the questions the motion presents — whether this discovery should proceed at all, and on what terms of use — cannot be revisited. *See In re Abubakar*, 696 F. Supp. 3d 479, 490 (N.D. Ill. 2023) (explaining that the court had stayed enforcement of a magistrate judge's § 1782 order because forcing production before the objector could file his Rule 72 objection "would have mooted his objection"). A short stay will not prejudice Applicant. The Irish identification proceeding is pending (Dkt. 8 ¶ 42); Applicant has said he will commence the foreign suits after the discovery sought here "has been obtained and reviewed" (*id.* ¶ 44); and Applicant's counsel first proposed October 16, later asserted October 21, and invited other dates (Ex. C). Mr. Syed asks that compliance with the subpoena, including the deposition, be stayed pending a hearing and ruling on a schedule the Court sets, and that Applicant be directed to file the subpoena as served, with its proof of service.

### II. The motion is properly before the Court and timely.

*The Court may revisit the subpoena now that Mr. Syed can be heard.* Applicant obtained ex parte consideration on the premise, as he told the Court, that "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move

to quash the discovery." (Dkt. 7-1 at 10 n.1 (internal quotation marks and citation omitted).) A district court "has broad discretion to grant, trim, or deny a § 1782(a) request." *In re Venequip, S.A.*, 83 F.4th 1048, 1056 (7th Cir. 2023). Section 1782 "entrusts to the district courts many decisions about the manner in which discovery under the statute is produced, handled, and used." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017). And an order granting an application "does not preclude" a respondent "from challenging the subpoenas under Federal Rule of Civil Procedure 45." *In re Lenovo (Deutschland) GmbH*, No. 1:26-cv-06475 (N.D. Ill. Aug. 5, 2026). This motion is not an objection under Rule 72(a) to a defect in the September 18 order. It is a motion to quash or modify a subpoena served on October 1 and for a protective order, and it rests principally on events after that order: service of the subpoena, the Related Case plaintiffs' October 6 requests (including their request for everything produced here), and Applicant's October 13 assertion of a return date. To the extent the Court treats the request to vacate as one for reconsideration, reconsideration is available "to present newly discovered evidence," *Caisse Nationale de Crédit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks omitted), and that is what Request No. 28 and the other October 6 requests are: evidence that did not exist on September 18.

*The motion is timely.* Rule 45 requires that a motion to quash be "timely," Fed. R. Civ. P. 45(d)(3)(A), but sets no deadline for one. Courts in this District have held that a motion filed on or before the date for compliance is timely. *See Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965, at *3 (N.D. Ill. Aug. 25, 2009) (motion filed on the compliance date "was clearly filed in a timely manner"); *Richardson v. Comm'r, Ind. Dep't of Corr.*, No. 1:24-cv-12395 (N.D. Ill. May 6, 2025) (noting that courts have divided on whether a motion to quash must be filed within the objection period, and reaching the merits of a motion filed after the return date). This motion is filed before the October 21 date Applicant asserts.

*Any lapse in written objections should be excused.* Written objections are due "before the earlier of the time specified for compliance or 14 days after the subpoena is served," Fed. R. Civ.

P. 45(d)(2)(B) — here, October 15, 2026. To the extent that period applies and objections were not served, Mr. Syed asks the Court to excuse the lapse. Waiver is not automatic. In *Ott v. City of Milwaukee*, the district court considered "whether special circumstances warranted an exception to waiver" and found none on that record, 682 F.3d 552, 554 (7th Cir. 2012), and the Seventh Circuit, which dismissed the appeal for want of jurisdiction, faulted objectors who had offered only a "brief and broad reservation of rights" and "even now ha[d] not revealed what specific 'substantive objections' they [were] talking about," *id.* at 558. Mr. Syed's objections are specific and are stated in full in this motion. And the considerations that led the court in *Richardson* to decline to find a motion filed after the return date untimely and to reach its merits — important legal issues, contact between counsel, and no prejudice — are present here, along with more. Applicant obtained ex parte treatment by telling the Court that parties would have the opportunity to move to quash. (Dkt. 7-1 at 10 n.1.) The decisive facts — the Related Case plaintiffs' October 6 requests and Applicant's October 13 assertion of a return date — arose after the September 18 order. Prior counsel, who had an appearance on file, was not sent the subpoena, told Applicant's counsel that a conference would need to wait until the week after October 19, and held no conference; present counsel was retained on October 16 and moved on the next business day. Applicant can show no prejudice from a ruling before production. And the third *Intel* factor, and the Court's authority under Rule 26(c), do not depend on a Rule 45 objection at all; they concern how the Court exercises its own discretion over discovery it authorized.

### III. The subpoena would operate as discovery in the Related Case outside the procedures that govern it.

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). The § 1782 screen "is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011). A "§ 1782 applicant could attempt to abuse the statute to obtain documents outside the discovery

procedures set forth in the Federal Rules of Civil Procedure," and "this kind of subterfuge is a valid reason to reject a § 1782 application in the first place." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015). Parties concerned that an applicant is seeking "discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure can and should bring evidence of such chicanery to the § 1782 court's attention." *Id.* In the related setting of foreign litigation used as a ruse for other proceedings, the Second Circuit has observed that such evidence "could provide good cause for entry of a protective order prohibiting use of the discovery in other proceedings" and "might support denying the Section 1782 application altogether." *Accent Delight*, 869 F.3d at 135. Four features of this record show that the subpoena reaches into the Related Case.

*First, the subject matter is the same and is contested there.* The Related Case alleges that Mr. Syed created or caused fake accounts to disparage the PTPA, Winners Alliance, and their leadership; that he disparaged Mr. Nassar; and that he disclosed, and threatened to use, the PTPA's privileged and confidential information. (Related Case Dkt. 32 ¶¶ 40, 42, 56, 91.) Mr. Syed denies the fake-account, confidential-information, and breach allegations and the first sentence of paragraph 40. (Related Case Dkt. 62 ¶¶ 40, 42, 56, 91.) The subpoena asks who operated anonymous accounts that posted about Mr. Nassar, Winners Alliance, and the PTPA (Requests Nos. 1, 3, 4, 6). Request No. 4 is not limited, as the September 18 order described it, to accounts "used to publish statements about Nassar" (Dkt. 19 at 3); it reaches any anonymous account that published statements about Winners Alliance or the PTPA alone — the plaintiffs in the Related Case. Request No. 5 asks for information Mr. Syed allegedly "supplied to or received from any person" about the governance of the PTPA and the finances of Winners Alliance — the same conduct the Related Case pleads. Mr. Nassar's own declaration describes that alleged conduct (Dkt. 8 ¶¶ 27–30, 34), and he has told Judge Cummings that this application grows out of the "same broad smear campaign" that is "one of the key 'occurrences'" in the Related Case. (Related Case Dkt. 55 at 7.)

*Second, the applicant and the Related Case plaintiffs* are aligned, and his counsel also represents them on this subject. Mr. Nassar runs Winners Alliance. (Dkt. 8 ¶ 2.) His § 1782 counsel represents Winners Alliance and the PTPA in connection with the same alleged campaign, and sent Mr. Syed a demand on their behalf in June investigating whether he directed the statements. (Dkt. 9 ¶¶ 3, 6–7.) The documents would be produced to that firm. (Dkt. 1-1 at 1.)

*Third, the Related Case plaintiffs have asked for the same material — and for this production.* On October 6, the PTPA and Winners Alliance requested Mr. Syed's social-media account data and contents, his communications with anyone who ran accounts at his direction, all his communications with Mr. Lambrou, an identification of any pseudonymous posts, and "[a]ll Documents produced (or later produced)" here. (Ex. A, Request Nos. 24–26, 28; Ex. B, Interrogatory No. 14.) Under Magistrate Judge Kim's order, those requests are answered by November 19, the parties then confer about the responses by December 10 and report any disputes by December 22, and the court will not consider general objections. (Related Case Dkt. 47.) The subpoena demands the same documents a month earlier, from the same person, delivered to Applicant's counsel — who also represents the Related Case plaintiffs on this subject (Dkt. 9 ¶ 3) — with no protective order and none of those procedures. The application's premise — that the Related Case "does not provide an alternative path" because Mr. Nassar "is not a party" (Dkt. 7-1 at 35) — does not hold. The parties aligned with him, whom his § 1782 counsel also represents on this subject (Dkt. 9 ¶ 3), have served precisely that discovery through their counsel of record in the Related Case, and they have asked for this production by name.

*Fourth, nothing limits use.* Absent an order, discovery obtained under § 1782 may be used elsewhere: § 1782 "does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *Accent Delight*, 869 F.3d at 135; *see Glock*, 797 F.3d at 1010. Nothing in the September 18 order would prevent the material from flowing into the Related Case, as Request No. 28 contemplates.

Applicant disclosed that the Related Case exists. (Dkt. 7-1 at 18, 35.) But the question under the third factor is what the request would do, and the record now shows what it would do: deliver to counsel who also represents the Related Case plaintiffs on this subject, early and outside Magistrate Judge Kim's procedures, discovery those plaintiffs have requested for themselves. That factor weighs decisively against compelling discovery from Mr. Syed through this proceeding. The Court should quash the subpoena as to Mr. Syed and leave discovery on these subjects to the Related Case, where it has already been requested.

## IV. Request No. 5 seeks the Related Case plaintiffs' governance and financial information, whose handling belongs in that case.

Request No. 5 reaches information about "the governance of the PTPA" and "the finances of Winners Alliance." (Dkt. 1-1 at 9.) Mr. Nassar says the Posts reflect apparent access to non-public PTPA and Winners Alliance information available to Mr. Syed "by virtue of his positions" (Dkt. 8 ¶¶ 27, 34), and his Irish solicitor says the documents sought will show whether the accusations were "fabricated or knowingly distorted from non-public information available to Mr. Mir by virtue of his former positions" (Dkt. 11 ¶ 21). Whether Mr. Syed disclosed or used that information is a claim in the Related Case (Related Case Dkt. 32 ¶¶ 56, 91), and who controls the PTPA, and therefore who may assert or waive its privilege, is itself disputed there. (*Id.* ¶ 52; Related Case Dkt. 62 ¶ 52.) The PTPA has pleaded there that it "has not waived, and does not waive, any privilege or protection as to Mir." (Related Case Dkt. 32 ¶ 56.) Section 1782 provides that a person "may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a); see also Fed. R. Civ. P. 45(d)(3)(A)(iii). Questions about the PTPA's privilege and the confidentiality of its and Winners Alliance's information should be decided in the case where those entities are parties and those issues are pleaded, not through a subpoena issued for an individual's foreign lawsuits — and not without notice to the PTPA, the holder of whatever privilege applies. If the Court directs production in any form, Mr. Syed will serve a privilege log for any responsive material withheld

on that basis. Nor is the rest of Request No. 5 needed from Mr. Syed. Applicant's solicitor identifies what Mr. Nassar cannot obtain himself: "[e]vidence of what a publisher was told, what he was given, and who instructed him," which "is not evidence that Mr. Nassar can obtain from his own records." (Dkt. 11 ¶ 24.) Mr. Nassar has already sworn to the falsity of the accusations in the Posts from his own knowledge of his and Winners Alliance's affairs (Dkt. 8 ¶¶ 16–22), and says he would have provided "the information set forth above demonstrating the falsity of the accusations in the Posts" had the publishers asked (*id.* ¶ 24).

**V. In the alternative, the Court should trim the subpoena and enter a protective order.**

If the Court does not quash the subpoena as to Mr. Syed, it should narrow it. "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. If a request asks for too much, "the district court can and should cut down its request, but not to nothing." *Heraeus*, 633 F.3d at 598. For good cause, the Court may forbid discovery, limit its scope, or specify its terms. Fed. R. Civ. P. 26(c)(1)(A), (B), (D). And a party may ask the § 1782 court "to enter a protective order prohibiting use, in United States proceedings, of documents obtained under the statute." *Glock*, 797 F.3d at 1009. Mr. Syed asks the Court to:

(a) strike Request No. 4, which is not limited to the two accounts at issue in the foreign proceedings, and Request No. 5, which seeks merits discovery in the Related Case and PTPA and Winners Alliance information whose handling is at issue there;

(b) if Requests Nos. 4 and 5 are not stricken, conform Request No. 4 to the Court's description of the requests — accounts "used to publish statements about Nassar" (Dkt. 19 at 3) — and limit Request No. 5 to what Mr. Syed supplied to or received from persons other than the PTPA, Winners Alliance, and their counsel, which is the evidence Applicant's solicitor says Mr. Nassar cannot obtain from his own records (Dkt. 11 ¶ 24);

(c) limit Requests Nos. 1, 2, 3, and 6 to the two accounts and the Posts identified in the appendix to the subpoena, and to the period those Posts cover;

(d) narrow the definition of "You" to exclude Mr. Syed's attorneys, and exclude from any privilege-log obligation his communications with litigation counsel;

(e) order that no production occur until a protective order is entered in the Related Case or the Court enters interim confidentiality terms, and that any production be subject to those terms;

(f) order that material produced under the subpoena be used solely in the Irish and Serbian proceedings identified in the application, and not in any proceeding in the United States, including the Related Case, without leave of the court presiding over that proceeding;

(g) enter an order under Federal Rule of Evidence 502(d) in this matter and direct that the PTPA, through its counsel of record in the Related Case, receive notice and an opportunity to be heard before any production responsive to Request No. 5;

(h) set any compliance date no earlier than November 19, 2026, the date responses are due in the Related Case; and

(i) limit any deposition to the scope Applicant described — "authenticating and explaining the documents produced" (Dkt. 9 ¶ 13) — and to a stated time, and coordinate it with Mr. Syed's deposition in the Related Case.

Good cause exists for each term. The applicant's company and the PTPA are litigating against Mr. Syed over the same allegations, are represented on this subject by the applicant's § 1782 counsel (Dkt. 9 ¶ 3), and have asked for this production. The material sought includes PTPA and Winners Alliance information whose confidentiality and privilege are at issue in that case. And without these limits, Mr. Syed would face two overlapping discovery processes on the same subject, one with the protections that Magistrate Judge Kim's order provides (Related Case Dkt. 47) and that the protective order the parties have been directed to negotiate (Related Case Dkt. 45 ¶ 2) would provide, and one without them.

## CONCLUSION

WHEREFORE, Respondent Wajid Mir Syed respectfully requests that the Court enter an order:

(a) staying compliance with the subpoena directed to him, including the asserted October 21, 2026 return date and any deposition, until the Court rules on this motion;

(b) quashing the subpoena directed to Mr. Syed and vacating the September 18, 2026 Order (Dkt. 19) insofar as it authorizes discovery from him;

(c) in the alternative, modifying the subpoena and entering a protective order on the terms set out in Part V; and

(d) granting such other relief as the Court deems just and proper.

Dated: October 19, 2026

Respectfully submitted,

**WAJID MIR SYED,**
Respondent,

*By: /s/Alexander Loftus*
One of His Attorneys

Alexander N. Loftus, Esq.
Jordan Shea, Esq.
LOFTUS & EISENBERG, LTD.
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602
(312) 899-6625
alex@loftusandeisenberg.com
jordan@loftusandeisenberg.com
Counsel for Respondent Wajid Mir Syed

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on October 19, 2026, he caused the foregoing to be filed through the Court's CM/ECF system, which will send notice of the filing to all counsel of record, and caused a copy to be served by e-mail on counsel for the Applicant.

/s/*Alexander Loftus*
Alexander N. Loftus

# EXHIBIT A

Plaintiffs' First Set of Requests for Production
PTPA v. Syed, No. 1:26-cv-07886 (served Oct. 6, 2026)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PROFESSIONAL TENNIS PLAYERS ASSOCIATION and WINNERS ALLIANCE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WAJID MIR SYED, a/k/a WAJID MIR,<br><br>Defendant. | Case No. 1:26-cv-7886<br><br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFFS PROFESSIONAL TENNIS PLAYERS ASSOCIATION AND WINNERS ALLIANCE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT WAJID MIR**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Professional Tennis Players Association and Winners Alliance, Inc., request that Defendant Wajid Mir produce for inspection and copying the Documents described below, in accordance with all applicable rules and the Definitions and Instructions set forth below, by no later than November 19, 2026 (Dkt. 47), at the offices of Eimer Stahl LLP or at such other time, place, and manner as the parties may agree or the Court may order.

**DEFINITIONS**

1. "Document(s)" has the broadest meaning permitted under Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001 and includes all Communications and all electronically stored information ("ESI") in any form, drafts, non-identical copies, metadata, text messages, chat/instant messages, email, calendar entries, presentations, data, and audio or video recordings. "Document(s)" further includes, but is not limited to, the original and all copies (regardless of origin and whether or not including additional writing thereon or attached thereto) of memoranda, reports, emails, books, manuals, instructions, financial statements or reports, price

books, records, notes, letters, notices, confirmations, telegrams, receipts, papers, pamphlets, magazines, newspapers, inventory books, prospectuses, interoffice and intra-office communications, contracts, cables, notations or memoranda of any sort regarding conversations and/or telephone calls and/or meetings and/or other communications, bulletins, printed matter, computer printouts, facsimile transmissions, teletypes, telexes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, reviews, opinions, offers, studies and investigation questionnaires and surveys, worksheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures, electronic and mechanical records, tapes, cassettes, discs, recordings and computer printouts) and other written, printed, typed, electronic or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, phone record, disc, film, tape, videotape, or online.

2. "Communications" means any Document constituting, memorializing, or reflecting any written, oral, telephonic, or other utterance of any nature whatsoever, shared, shown, and/or transferred between and/or among any Person(s), including but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, emails, text messages, voice messages, faxes, notations, telegrams, advertisements, interviews, conferences, and presentations.

3. "You", "Your", and "Mir" mean Defendant Wajid Mir Syed, also known as Wajid Mir, and any Person acting or purporting to act on his behalf, including his attorneys, agents, representatives, employees, and consultants.

4. "PTPA" means Plaintiff Professional Tennis Players Association, including its divisions, subsidiaries, affiliates, and predecessors, and its present and former officers, directors, members, employees, agents, and representatives (other than You).

5. "Winners Alliance" means Plaintiff Winners Alliance, Inc., including its divisions, subsidiaries, affiliates, and predecessors, and its present and former officers, directors, employees, agents, and representatives (other than You).

6. "Plaintiffs" means the PTPA and Winners Alliance, collectively.

7. "Concerning," "relating to," and "regarding" mean, in whole or in part, referring to, relating to, reflecting, evidencing, describing, constituting, discussing, analyzing, mentioning, or otherwise pertaining to the subject matter.

8. "Person" or "Persons" mean all entities, including, without limiting the generality of the foregoing, all individuals, associations, companies, partnerships, joint ventures, corporations, trusts, states, departments, boards, bureaus and public agencies, and any other public, private, or legal entity.

9. "Executive Committee" means the Executive Committee of the PTPA, as described in the Articles and the Bylaws, and any of its members.

10. "Executive Director" means the Executive Director of the PTPA.

11. "Articles" and "Articles of Incorporation" mean the PTPA's Articles of Incorporation, including all amendments thereto.

12. "Bylaws" mean the PTPA's Constitution and Bylaws, including all amendments thereto.

13. "Antitrust Action" means the action captioned *Pospisil v. ATP Tour, Inc.*, No. 1:25-cv-02207 (S.D.N.Y.).

14. "District of Columbia Action" means the action captioned *Professional Tennis Players Association, et al., v. Vasek Pospisil, et al.*, No. 2026-CAB-004387 (D.D.C.).

15. "Complaint" means the First Amended Complaint in this action, dated July 24, 2026.

16. "Employment Agreement" means the Employee Obligations, Non-Disclosure and Proprietary Information Agreement You signed on or about December 6, 2022, attached as Exhibit D to the Complaint.

17. "June 3 Resolutions" means the three purported resolutions dated June 3, 2026, attached as Exhibit C to Your Declaration filed July 9, 2026 (Dkt. 18-3).

18. "Appointment Form" means the "Executive Committee Member Acknowledgment" form, an example of which (executed by Arina Rodionova) is attached as Exhibit D to Your Declaration (Dkt. 18-3), and any "appointment confirmation" form of like kind.

19. "Relevant Period" for purposes of these RFPs is December 1, 2022, to the present, except where otherwise stated.

20. "Including" and "includes" mean "including but not limited to."

21. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of a Request all responses that might otherwise be construed to be outside its scope.

22. The singular includes the plural and vice versa.

**INSTRUCTIONS**

1. These Requests seek all responsive Documents in Your possession, custody, or control, including Documents held by Your agents, attorneys, or other representatives, and Documents You have the practical or legal ability to obtain, including Documents stored on

personal devices. This also includes but is not limited to any such Documents sent, received, or stored using a personal email account, personal device, or personal messaging application.

2. Produce Documents as they are kept in the ordinary course of business or organized and labeled to correspond to the Requests to which they respond, and produce ESI in accordance with the parties' ESI protocol; absent agreement, produce ESI in native format with all metadata and any necessary load files.

3. For any Document withheld or redacted on a claim of privilege or protection, provide a privilege log sufficient to comply with Federal Rule of Civil Procedure 26(b)(5). Production of privileged material shall be governed by the parties' Federal Rule of Evidence 502(d) order.

4. If You object to any Request in part, produce all Documents responsive to the unobjectionable portion and state the grounds for each objection with specificity.

5. If any responsive Document once existed but has been lost, destroyed, or is otherwise no longer available, identify the Document with as much specificity as possible, describe its contents, and state the circumstances and date of its unavailability, and produce Your document-retention and litigation-hold policies.

6. These Requests are continuing in nature. If You obtain or become aware of additional responsive Documents after Your initial production, You must supplement Your production pursuant to Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All Documents concerning the Employment Agreement.

2. All Documents concerning any PTPA or Winners Alliance information, files, records, or data in Your possession, custody, or control.

3. All Communications between or among any or all of You, Anastasia Skavronskaia, Saisai Zheng, Taylor Townsend, Marco Trungelliti, Arina Rodionova, Nick Kyrgios, Francis Tiafoe, Mark Madden, and Novak Djokovic, or any Person acting on behalf of any of the foregoing, concerning the PTPA, Winners Alliance, or any of their respective officers, directors, Executive Committee members, or employees.

4. All Communications between or among any or all of You and any current, former, purported, or prospective member of the Executive Committee concerning the PTPA, Winners Alliance, or any of their respective officers, directors, Executive Committee members, or employees.

5. All non-public Documents concerning the District of Columbia Action.

6. All non-public Documents concerning the Antitrust Action.

7. All Communications between or among any or all of You and any named plaintiff, putative class member, defendant, or alleged co-conspirator in the Antitrust Action, or any Person acting on behalf of any of the foregoing (including counsel), concerning the Antitrust Action, including its resolution or settlement and the PTPA's role in it.

8. All Communications between or among You and any attorney at Weil, Gotshal & Manges LLP concerning the Antitrust Action or the PTPA.

9. All Documents concerning the governance of the PTPA's Executive Committee, including all Documents concerning:

a. The drafting, revision, implementation, or interpretation of the PTPA's Articles of Incorporation or its Bylaws.

b. The appointing, electing, or removal of any member of the Executive Committee or any officer, including the manner of filling vacancies, the vote required, and

any requirement of Executive Committee approval.

c. The duration, expiration, or continuation of the term of a member of the Executive Committee, including the continuation of a member in office pending the election or qualification of a successor.

d. The requirements or procedures for calling, noticing, or holding a meeting of the Executive Committee, including notice and quorum.

10. All Documents concerning Your attempts to recruit or appoint any prospective member of the Executive Committee (regardless of whether such prospective member in fact became a member), including all drafts of the Appointment Form.

11. All Documents concerning the purported PTPA Executive Committee meeting held on June 3, 2026.

12. All Documents concerning the purported June 3 Resolutions.

13. All Documents concerning the appointment of Romain Rosenberg as Executive Director of the PTPA.

14. All Documents concerning the planned, desired, anticipated, or purported removal of Romain Rosenberg as Executive Director.

15. All Documents concerning the planned, desired, anticipated, or purported continuation or change of Your role, title, or authority at the PTPA following the departure or removal of Ahmad Nasser or Romain Rosenberg.

16. All Documents concerning the termination (actual, purported, anticipated, or communicated) of Your employment by Winners Alliance or the PTPA.

17. All Documents concerning any attempt by You to contact, retain, engage, or communicate in any way with any attorney or outside counsel on behalf of the PTPA, including

without limitation emails and other correspondence, engagement letters and other agreements, invoices, billing records, and payment records.

18. All Communications between or among You and any Clifford Chance attorney concerning the PTPA, Winners Alliance, or any of their respective officers, directors, Executive Committee members, or employees.

19. All Communications between or among You and any Correia & Puth attorney concerning the PTPA, Winners Alliance, or any of their respective officers, directors, Executive Committee members, or employees.

20. All Documents concerning the anonymous complaint concerning a PTPA contractor's conduct toward Anastasia Skavronskaia that was submitted to the PTPA's public email account.

21. All Documents concerning any representation by You between June 3, 2026 and the present that You were employed by, an officer or agent of, or authorized to act or speak for the PTPA, including as its General Counsel or Executive Vice President.

22. All Documents concerning any interactions between you and any other Person between June 3, 2026 and the present in which You acted, or held Yourself out expressly or impliedly as, an employee, officer, or agent of, or authorized to act or speak for the PTPA, including as its General Counsel or Executive Vice President.

23. All Documents concerning your job performance, compensation, title, roles, responsibilities, or authority while an employee of PTPA or Winners Alliance.

24. All contents of, and all account data and metadata (including account-creation date, registration information, and IP-address and login records) for, any social-media account that You, or any Person at Your direction or request, created, operated, controlled, or posted on or through

and that referred in any way to the PTPA, Winners Alliance, or any of their respective officers, directors, Executive Committee members, or employees.

25. All Communications between You and any Person who at Your direction created, operated, controlled, or posted on or through any social-media account (or caused, requested, or influenced another to create, operate, control, or post on or through any social-media account) that referred in any way to the PTPA, Winners Alliance, or any of their officers or employees.

26. All Communications between You and Christos Lambrou.

27. Phone and message records reflecting the telephone numbers (and to the extent ascertainable from such records, the associated identity) and WhatsApp or other messaging handles (and to the extent ascertainable from such records, the associated identity) that You communicated with, whether by phone, text message, WhatsApp, or otherwise.

28. All Documents produced (or later produced) in the matter of *In re Ex Parte Application of Ahmad Nassar For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*.

29. All Documents identified, or that you were asked to identify, in Your Responses to the PTPA's First Set of Interrogatories.

Dated: October 6, 2026

*/s/ Bradley Tucker*
Nathan P. Eimer
James W. Joseph
Daniel D. Birk
Bradley A. Tucker
Mila B. Rusafova
**Eimer Stahl LLP**
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
(312) 660-7600
neimer@eimerstahl.com
jjoseph@eimerstahl.com
dbirk@eimerstahl.com
btucker@eimerstahl.com
mrusafova@eimerstahl.com

*Attorneys for Plaintiffs Professional Tennis Players Association and Winners Alliance, Inc.*

# EXHIBIT B

Plaintiffs’ First Set of Interrogatories
PTPA v. Syed, No. 1:26-cv-07886 (served Oct. 6, 2026)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PROFESSIONAL TENNIS PLAYERS ASSOCIATION and WINNERS ALLIANCE, INC.,<br>Plaintiffs,<br>v.<br>WAJID MIR SYED, a/k/a WAJID MIR,<br>Defendant. | Case No. 1:26-cv-7886<br>Hon. Jeffrey I. Cummings<br>Magistrate Judge Young B. Kim |

**PLAINTIFFS PROFESSIONAL TENNIS PLAYERS ASSOCIATION AND WINNERS ALLIANCE, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT WAJID MIR**

Pursuant to Federal Rule of Civil Procedure 33, Plaintiffs Professional Tennis Players Association and Winners Alliance, Inc. request that Defendant Wajid Mir answer separately, fully, in writing, and under oath, by no later than November 19, 2026, each of the following Interrogatories, in accordance with the Definitions and Instructions set forth below.

**DEFINITIONS**

1. "Document(s)" has the broadest meaning permitted under Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001 and includes all Communications and all electronically stored information ("ESI") in any form, drafts, non-identical copies, metadata, text messages, chat/instant messages, emails, calendar entries, presentations, data, and audio or video recordings. "Document(s)" further includes, but is not limited to, the original and all copies (regardless of origin and whether or not including additional writing thereon or attached thereto) of memoranda, reports, emails, books, manuals, instructions, financial statements or reports, price books, records, notes, letters, notices, confirmations, telegrams, receipts, papers, pamphlets,

magazines, newspapers, inventory books, prospectuses, interoffice and intra-office communications, contracts, cables, notations or memoranda of any sort regarding conversations and/or telephone calls and/or meetings and/or other communications, bulletins, printed matter, computer printouts, facsimile transmissions, teletypes, telexes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, reviews, opinions, offers, studies and investigation questionnaires and surveys, worksheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures, electronic and mechanical records, tapes, cassettes, discs, recordings and computer printouts) and other written, printed, typed, electronic or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, phone record, disc, film, tape, videotape, or online.

2. “Communications” means any Document constituting, memorializing, or reflecting any written, oral, telephonic, or other utterance of any nature whatsoever, shared, shown, and/or transferred between and/or among any Person(s), including but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, emails, text messages, voice messages, faxes, notations, telegrams, advertisements, interviews, conferences, and presentations.

3. “Identify” means, when referring to a Document, to the extent known, the (a) type of Document; (b) general subject matter; (c) date of the Document; (d) author(s), addressee(s), and recipient(s); and (e) any applicable Bates number(s). “Identify” means, when referring to Person(s), to state the full name, present business address, email address(es), and all telephone

numbers including mobile telephone numbers, as well as the home address, personal email address(es), and all telephone numbers in the case of a natural Person, including, if any of the preceding information has changed during the Relevant Period, the time period to which the information provided in your answer pertains.

4. "You", "Your", and "Mir" mean Defendant Wajid Mir Syed, also known as Wajid Mir, and any Person acting or purporting to act on his behalf, including his attorneys, agents, representatives, employees, and consultants.

5. "PTPA" means Plaintiff Professional Tennis Players Association, including its divisions, subsidiaries, affiliates, and predecessors, and its present and former officers, directors, members, employees, agents, and representatives (other than You).

6. "Winners Alliance" means Plaintiff Winners Alliance, Inc., including its divisions, subsidiaries, affiliates, and predecessors, and its present and former officers, directors, employees, agents, and representatives (other than You).

7. "Plaintiffs" means the PTPA and Winners Alliance, collectively.

8. "Concerning," "relating to," and "regarding" mean, in whole or in part, referring to, relating to, reflecting, evidencing, describing, constituting, discussing, analyzing, mentioning, or otherwise pertaining to the subject matter.

9. "Person" or "Persons" mean all entities, including, without limiting the generality of the foregoing, all individuals, associations, companies, partnerships, joint ventures, corporations, trusts, states, departments, boards, bureaus and public agencies, and any other public, private, or legal entity.

10. "Executive Committee" means the Executive Committee of the PTPA, as described in the Articles and the Bylaws, and any of its members.

11. “Executive Director” means the Executive Director of the PTPA.

12. “Articles” and “Articles of Incorporation” mean the PTPA’s Articles of Incorporation, including all amendments thereto.

13. “Bylaws” mean the PTPA’s Constitution and Bylaws, including all amendments thereto.

14. “Antitrust Action” means the action captioned *Pospisil v. ATP Tour, Inc.*, No. 1:25-cv-02207 (S.D.N.Y.).

15. “District of Columbia Action” means the action captioned *Professional Tennis Players Association, et al. v. Vasek Pospisil, et al*., No. 2026-CAB-004387 (D.D.C.).

16. “Complaint” means the First Amended Complaint in this action, dated July 25, 2026.

17. “Employment Agreement” means the Employee Obligations, Non-Disclosure and Proprietary Information Agreement You signed on or about December 6, 2022, attached as Exhibit D to the Complaint.

18. “June 3 Resolutions” means the three purported resolutions dated June 3, 2026, attached as Exhibit C to Your Declaration filed July 9, 2026 (Dkt. 18-3).

19. “Appointment Form” means the “Executive Committee Member Acknowledgment” form, an example of which (executed by Arina Rodionova) is attached as Exhibit D to Your Declaration (Dkt. 18-3), and any “appointment confirmation” form of like kind.

20. “Control Effort” means any effort, whether completed or not, to (i) remove Romain Rosenberg as Executive Director; (ii) remove, replace, or appoint any member of the Executive Committee, including by soliciting or executing any Appointment Form; (iii) adopt, ratify, or implement the purported June 3 Resolutions; (iv) vest in You, or in the Persons who purported to

adopt the June 3 Resolutions, authority over the PTPA's governance, operations, finances, accounts, email or other systems, or outside counsel; (v) direct or change the PTPA's position, counsel, or strategy in the Antitrust Action; (vi) file, fund, prepare, direct, or prosecute the District of Columbia Action; or (vii) fund or otherwise financially support Your defense in this matter.

21. "Relevant Period" for purposes of these Interrogatories is December 1, 2022, to the present, except where otherwise stated.

22. "Including" and "includes" mean "including but not limited to."

23. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of a request all responses that might otherwise be construed to be outside its scope.

24. The singular includes the plural and vice versa.

## INSTRUCTIONS

1. These Interrogatories are served pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Illinois.

2. You must answer each Interrogatory separately and fully, in writing and under oath, by no later than November 19, 2026, unless otherwise agreed or ordered.

3. If You object to any Interrogatory in whole or in part, state the grounds for the objection with specificity and answer the remainder.

4. If You withhold any information on the basis of privilege or work-product protection, identify the privilege or protection claimed and provide sufficient information to enable Plaintiffs to assess the claim, consistent with Federal Rule of Civil Procedure 26(b)(5).

5. These Interrogatories are continuing in nature. You are under a duty to supplement or correct Your answers pursuant to Federal Rule of Civil Procedure 26(e).

6. Unless otherwise stated, the Relevant Period applies to each Interrogatory.

## INTERROGATORIES

1. Identify all Persons with knowledge of the facts alleged in the Complaint, and for each person, state the subject matter of that person's knowledge and their contact information, including most recent location, address, phone number, and email address.

2. Identify each Person who participated in, assisted with, advised on, funded, or coordinated with You on any Control Effort. For each Person, describe the nature of that Person's role, including the specific acts the Person took, the approximate dates of the Person's involvement, and any money, services, or other thing of value the Person provided or received in connection with any Control Effort.

3. Identify each player to whom you "disclosed there were potential conflicts given Nassar's dual role," as admitted in Your answer to Paragraph 40 of the Complaint, and identify the date and describe the substance of each such conversation.

4. Describe in detail Your involvement in and knowledge of the anonymous complaint concerning a PTPA contractor's conduct toward Anastasia Skavronskaia that was submitted to the PTPA's public email account (the "Anonymous Complaint"). In Your answer, (a) Identify each Person who prepared, submitted, or assisted in its preparation or submission, if known to You, and state the basis for Your knowledge and describe that person's role; (b) Identify each Communication between or among You and any of the foregoing, or anyone acting on their behalf, concerning the Anonymous Complaint or its subject matter; and (c) state when and how You first

learned of the Anonymous Complaint, including whether You knew of it before it was submitted to the PTPA.

5. Describe in detail Your involvement in preparing, soliciting, reviewing, discussing, or otherwise participating in the creation of the May 31, 2026 confidential demand letter sent to the PTPA by Anastasia Skavronskaia, including any discussions you have had with Ms. Skavronskaia or with her attorney concerning the letter or her claim.

6. Describe in detail the purported Executive Committee meeting of June 3, including the date and time it occurred, how it was convened, the notice provided to any Executive Committee member, the identity of each Person who attended or participated, the votes cast, and who drafted or signed the resolutions.

7. Describe in detail Your role in the District of Columbia Action, including whether and in what way You retained or communicated with the attorneys for the plaintiffs or directed, funded, coordinated, or participated in the filing or prosecution of that action or the preparation of any filings, both before and after the Superior Court's denial of the motion for a temporary restraining order, and Identify all Persons involved.

8. Identify each Person that You or any Person acting in concert with You, including Ms. Skavronskaia, solicited, recruited, or approached to serve on the Executive Committee during the Relevant Period, and for each, state what the Person was told concerning appointment to the Executive Committee and when.

9. Identify each Communication since March 1, 2026, direct or indirect, between You and any attorney at Weil, Gotshal & Manges LLP relating to the PTPA or the Antitrust Action, including the date, participants, and substance of each Communication.

10. Identify each Communication since March 1, 2026, direct or indirect, between or among You and any named plaintiff, putative class member, defendant, or alleged co-conspirator in the Antitrust Action, or any Person acting on behalf of any of the foregoing (including counsel), concerning the Antitrust Action, including its resolution or settlement and the PTPA's role in it.

11. Identify each Communication since March 1, 2026, direct or indirect, between or among You and any Clifford Chance attorney relating to the PTPA, including the date, participants, and substance of each Communication.

12. Identify all property, files, records, Documents, and data of the PTPA or Winners Alliance that are or have been in Your possession, custody, or control since June 4, 2026, and state whether and when each was returned to Plaintiffs and whether any such information was disclosed, including to whom and when) to any Person other than Plaintiffs.

13. Identify each statement You made during the Relevant Period to any player, agent, tennis official, member of the press, or any other third party, concerning the PTPA, Winners Alliance, Ahmad Nassar, Romain Rosenberg, or other members of PTPA or Winners Alliance leadership that referred to any purported conflict of interest, self-dealing, or financial or other impropriety, including to whom and when.

14. Identify each post, comment, article, or other statement published on social media or any other publicly accessible platform since October 1, 2025, that refers to the PTPA, Winners Alliance, Ahmad Nassar, or Romain Rosenberg and that (a) You authored or published; (b) any other Person authored or published at Your request or direction; or (c) was published from any account that You have at any time created, maintained, controlled, or directed, including any account operated anonymously or under a pseudonym. For each such post, state its date, the platform, the account name or handle, its author, its URL, and its substance.

Dated: October 6, 2026

*/s/ Bradley Tucker*
Nathan P. Eimer
James W. Joseph
Daniel D. Birk
Bradley A. Tucker
Mila B. Rusafova
**Eimer Stahl LLP**
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
(312) 660-7600
neimer@eimerstahl.com
jjoseph@eimerstahl.com
dbirk@eimerstahl.com
btucker@eimerstahl.com
mrusafova@eimerstahl.com

*Attorneys for Plaintiffs Professional Tennis Players Association and Winners Alliance, Inc.*

# EXHIBIT C

E-mail correspondence between counsel
October 7–13, 2026

**From:** Kathryn Humphrey <kathryn@clarelocke.com>
**Sent:** Tuesday, October 13, 2026 3:20 PM
**To:** Amir Tahmassebi <amir@konicekdillonlaw.com>
**Cc:** Libby Locke <libby@clarelocke.com>; Joe Oliveri <joe@clarelocke.com>; Sarah Jacob <Sarah@konicekdillonlaw.com>; Taylor McGee <taylor@konicekdillonlaw.com>; Tihana Karlovic <tihana@konicekdillonlaw.com>
**Subject:** Re: In re Application of Ahmad Nassar, N.D. Ill. 26-cv-9964

Amir,

Yes. As I said in my October 7 email, we were (and we remain) happy to meet and confer with you regarding the subpoena before its October 21 return date.

I am concerned, however, that you have misrepresented to us—or at the very least misled us about—your ability to meet and confer. When we first offered to meet and confer, you told us you were unavailable until the week of October 26 because you were preparing for a trial. But, during that same period, you drafted and filed a lawsuit against our client, Mr. Nassar. Given that you were able to prepare a complaint and file a lawsuit against Mr. Nassar during this time, you surely had—and have—availability to meet and confer.

Please let us know dates and times **this week** that you can meet and confer.

Subject to any agreements that we may reach during our meet and confer, we expect that Mr. Mir will fully comply with the subpoena and produce all documents responsive to it by the October 21 return date—and we reserve the right to seek sanctions if he does not.

Sincerely,

Kathryn G. Humphrey | Associate
**CLARE LOCKE LLP**
10 Prince Street | Alexandria, Virginia 22314
(202) 899-3877 – direct | [cell number redacted]
kathryn@clarelocke.com | www.clarelocke.com (-> urldefense.proofpoint.com)

This electronic message transmission contains information from the law firm of Clare Locke LLP, which may be confidential or privileged. The information is intended exclusively for the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you received this electronic transmission in error, please notify us immediately at admin@clarelocke.com.

---

**From:** Amir Tahmassebi <amir@konicekdillonlaw.com>
**Date:** Tuesday, October 13, 2026 at 1:53 PM
**To:** Kathryn Humphrey <kathryn@clarelocke.com>
**Cc:** Libby Locke <libby@clarelocke.com>; Joe Oliveri <joe@clarelocke.com>; Sarah Jacob <Sarah@konicekdillonlaw.com>; Taylor McGee <taylor@konicekdillonlaw.com>;

Tihana Karlovic <tihana@konicekdillonlaw.com>
**Subject:** RE: In re Application of Ahmad Nassar, N.D. Ill. 26-cv-9964
Do you want to have a meet and confer on this subpoena?


Amir Tahmassebi
Konicek & Dillon, P.C.
70 W. Madison, Suite 2060
Chicago, IL 60602
(312) 328-9166 (Direct)
(630) 262-9659 (Fax)


---

**From:** Kathryn Humphrey <kathryn@clarelocke.com>
**Sent:** Wednesday, October 7, 2026 1:52 PM
**To:** Amir Tahmassebi <amir@konicekdillonlaw.com>
**Cc:** Libby Locke <libby@clarelocke.com>; Joe Oliveri <joe@clarelocke.com>; Sarah Jacob <Sarah@konicekdillonlaw.com>; Taylor McGee <taylor@konicekdillonlaw.com>; Tihana Karlovic <tihana@konicekdillonlaw.com>
**Subject:** Re: In re Application of Ahmad Nassar, N.D. Ill. 26-cv-9964

Amir,

Rule 45(b)(1) contemplates service on the person named in the subpoena. Now that you have agreed to accept service on Mr. Mir's behalf, which we appreciate, we are happy to serve you. Attached are copies of an updated document subpoena with a return date of 10/21 and an updated deposition subpoena with a deposition date of 11/10.

Waiting until the week of October 26 to meet and confer is unreasonable. The subpoena was served on 10/1, and waiting until 10/26 or later would mean almost a month passes before we make any effort to resolve the issues. We are happy to meet and confer at any point between now and 10/21, and we will work around your trial preparation schedule to do so. Please let us know your availability this week or early next week.

Best,
Kat


Kathryn G. Humphrey | Associate
**C L A R E L O C K E L L P**
10 Prince Street | Alexandria, Virginia 22314
(202) 899-3877 – direct | [cell number redacted]
kathryn@clarelocke.com | www.clarelocke.com (-> urldefense.proofpoint.com)



This electronic message transmission contains information from the law firm of Clare Locke LLP, which may be confidential or privileged. The information is intended exclusively for the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you received this electronic transmission in error, please notify us immediately at admin@clarelocke.com.

**From:** Amir Tahmassebi <amir@konicekdillonlaw.com>
**Date:** Wednesday, October 7, 2026 at 1:09 PM
**To:** Kathryn Humphrey <kathryn@clarelocke.com>
**Cc:** Libby Locke <libby@clarelocke.com>; Joe Oliveri <joe@clarelocke.com>; Sarah Jacob <Sarah@konicekdillonlaw.com>; Taylor McGee <taylor@konicekdillonlaw.com>; Tihana Karlovic <tihana@konicekdillonlaw.com>
**Subject:** RE: In re Application of Ahmad Nassar, N.D. Ill. 26-cv-9964

Kathryn,

Thanks for your email.  I'm not sure why you would not have sent me the subpoena directly as we have an appearance on file.  This is troubling – but in any event – please send a copy.

As for the dates, I start a trial on October 19 in DuPage County, *Zitella v. Rathje Woodward* and will be in full preparation mode from now until then.  I'm happy to have a call to meet and confer when we can comply with your requests that we deem appropriate.   But it would need to be the week after October 19th.  Thanks.

Amir

Amir Tahmassebi
Konicek & Dillon, P.C.
70 W. Madison, Suite 2060
Chicago, IL 60602
(312) 328-9166 (Direct)
(630) 262-9659 (Fax)

---

**From:** Kathryn Humphrey <kathryn@clarelocke.com>
**Sent:** Wednesday, October 7, 2026 10:54 AM
**To:** Amir Tahmassebi <amir@konicekdillonlaw.com>
**Cc:** Libby Locke <libby@clarelocke.com>; Joe Oliveri <joe@clarelocke.com>
**Subject:** In re Application of Ahmad Nassar, N.D. Ill. 26-cv-9964

Dear Mr. Tahmassebi,

I understand you represent Wajid Mir in connection with the subpoena for documents and testimony that we served on behalf of Ahmad Nassar on October 1, 2026. I am proposing the following dates for compliance:

• Document production: Friday, October 16, 2026
• Deposition: Tuesday, November 10, 2026, at 10 am, in person in Chicago.

This schedule gives your client two weeks from service to collect and produce responsive documents, and gives both sides time to review the production before the deposition.

If these dates don't work, please let me know what would, and we're happy to discuss. We will provide a specific location for the deposition once the date is agreed.

Thank you,
Kat

Kathryn G. Humphrey | Associate
C L A R E L O C K E L L P
10 Prince Street | Alexandria, Virginia 22314
(202) 899-3877 – direct | [cell number redacted]
kathryn@clarelocke.com | www.clarelocke.com (-> urldefense.proofpoint.com)

This electronic message transmission contains information from the law firm of Clare Locke LLP, which may be confidential or privileged. The information is intended exclusively for the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you received this electronic transmission in error, please notify us immediately at admin@clarelocke.com.